1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    APRIL DAVIS,                              No.  2:15-cv-766-KJN

12                    Plaintiff,

13             v.                               ORDER

14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                      Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

19    ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI")

20    under Title XVI of the Social Security Act ("Act").[1]  In her motion for summary judgment,

21    plaintiff principally contends that the Commissioner erred by finding that plaintiff was not

22    disabled from November 18, 2011, the date plaintiff's SSI application was filed, through the date

23    of the final administrative decision.  (ECF No. 16.)  The Commissioner filed an opposition to

24    plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 25.)  No optional reply

25    brief was filed.

26    _____

27    [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties
      voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF
28    Nos. 7, 22.)

For the reasons that follow, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the final decision of the Commissioner.

I.    BACKGROUND

Plaintiff was born on January 21, 1982, completed the 12th grade with special education classes, and previously worked as a fast food worker and cashier.  (Administrative Transcript ("AT") 212, 252, 346.)[2]  On November 18, 2011, plaintiff applied for SSI, alleging that her disability began on July 17, 2011, at 29 years of age, and that she was disabled due to a stroke, left side weakness, her left side "giving out," inability to move her left leg at times, headaches, memory loss, depression, and high cholesterol.  (AT 125, 140, 212, 251.)  After plaintiff's application was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on June 25, 2013, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified.  (AT 50-114.)  The ALJ subsequently issued a decision dated August 26, 2013, determining that plaintiff had not been under a disability, as defined in the Act, from November 18, 2011, the date that plaintiff's SSI application was filed, through the date of the ALJ's decision.  (AT 21-32.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on February 6, 2015.  (AT 1-3.)  Plaintiff then filed this action in federal district court on April 8, 2015, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ failed to base plaintiff's residual functional capacity assessment on substantial evidence; (2) whether the ALJ erroneously discounted plaintiff's credibility and the credibility of a third-party witness; (3)

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

1  whether the ALJ improperly failed to account for plaintiff's headaches; and (4) whether the ALJ

2  erred in not evaluating plaintiff for a somatoform disorder.[3]

3  III.   LEGAL STANDARD

4         The court reviews the Commissioner's decision to determine whether (1) it is based on

5  proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

6  as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

7  evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

8  F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

9  mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

10  Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

11  responsible for determining credibility, resolving conflicts in medical testimony, and resolving

12  ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The

13  court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

14  interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

15  IV.   DISCUSSION

16         A.   Summary of the ALJ's Findings

17         The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard

18  five-step analytical framework.[4]  At the first step, the ALJ concluded that plaintiff had not

19

20  [3] Plaintiff's brief raises these issues in a somewhat different order.

21  [4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
Security program. 42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled
22  persons with low income. 42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as
an "inability to engage in any substantial gainful activity" due to "a medically determinable
23  physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel
five-step sequential evaluation governs eligibility for benefits under both programs.  See 20
24  C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-
42 (1987).  The following summarizes the sequential evaluation:
25

26      Step one: Is the claimant engaging in substantial gainful activity?  If so, the
      claimant is found not disabled.  If not, proceed to step two.
27
      Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step
28      three.  If not, then a finding of not disabled is appropriate.

engaged in substantial gainful activity since November 18, 2011, the SSI application date.  (AT

23.)  At step two, the ALJ found that plaintiff had the following severe impairments:  migraine

headaches, obesity, depression, and anxiety.  (Id.)  However, at step three, the ALJ determined

that plaintiff did not have an impairment or combination of impairments that met or medically

equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT

26.)

      Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

("RFC") as follows:

> After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform sedentary
> work as defined in 20 CFR 416.967(a) except that the claimant is
> limited to simple repetitive tasks in a non-public setting.  The
> claimant is also limited to occasional interaction with coworkers
> and supervisors.

(AT 28.)

      At step four, the ALJ determined that plaintiff was unable to perform any past relevant

work.  (AT 31.)  However, at step five, the ALJ found, in reliance on the VE's testimony, that, in

light of plaintiff's age, education, work experience, and RFC, there were jobs that existed in

significant numbers in the national economy that plaintiff could perform.  (AT 31-32.)  Thus, the

---

> Step three: Does the claimant's impairment or combination of impairments meet or
> equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
> claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing her past relevant work?  If so, the
> claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any
> other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

      The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
evaluation process proceeds to step five.  Id.

1    ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from

2    November 18, 2011, the date that plaintiff's SSI application was filed, through the date of the

3    ALJ's decision.  (AT 32.)

4         B.    Plaintiff's Substantive Challenges to the Commissioner's Determinations

5              *Whether the ALJ failed to base plaintiff's residual functional capacity assessment*

6    *on substantial evidence*

7         The record in this case contains treatment records, but no functional capacity assessments,

8    from plaintiff's treating providers.  Thus, in evaluating the medical evidence for purposes of

9    formulating plaintiff's RFC, the ALJ primarily relied on the opinions of the state agency

10   physicians and a consultative examiner, as well as plaintiff's treatment records.

11        The weight given to medical opinions depends in part on whether they are proffered by

12   treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195,

13   1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking,

14   a treating physician's opinion carries more weight than an examining physician's opinion, and an

15   examining physician's opinion carries more weight than a non-examining physician's opinion.

16   Holohan, 246 F.3d at 1202.

17        To evaluate whether an ALJ properly rejected a medical opinion, in addition to

18   considering its source, the court considers whether (1) contradictory opinions are in the record;

19   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

20   treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

21   F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be

22   rejected for "specific and legitimate" reasons.  Id. at 830.

23        While a treating professional's opinion generally is accorded superior weight, if it is

24   contradicted by a supported examining professional's opinion (supported by different

25   independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

26   1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The

27   regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253

28   F.3d at 1157, except that the ALJ in any event need not give it any weight if it is conclusory and

1   supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)

2   (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881

3   F.2d at 751.  The opinion of a non-examining professional, by itself, is insufficient to reject the

4   opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

5         With respect to the physical component of plaintiff's RFC, the ALJ found that plaintiff

6   was capable of performing sedentary work.  (AT 28.)  In reaching that conclusion, the ALJ

7   properly relied on the October 9, 2012 opinion of state agency physician, Dr. Amon, who

8   reviewed plaintiff's records and opined that plaintiff was capable of performing light work.  (AT

9   136-37.)  Dr. Amon's opinion was consistent with the weight of plaintiff's treatment records.  See

10  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (the opinion of a non-examining

11  medical expert may constitute substantial evidence when it is "consistent with other independent

12  evidence in the record.").  As the ALJ's decision summarized in detail, the medical records

13  generally show that, although plaintiff reported symptoms of left-sided numbness, weakness, and

14  headaches on several occasions to different emergency rooms and other medical facilities, results

15  from imaging studies (including MRIs, CT scans, and magnetic resonance angiography studies)

16  were normal, with no evidence of a stroke or transient ischemic attack, and plaintiff's concerns

17  quickly resolved in the course of most visits.  (AT 23-25, 29-30.)  EMG studies of plaintiff's

18  upper extremities did show some abnormalities, but these were described as a mild to moderate

19  amount of "normal appearing spontaneous activity."  (AT 29, 600, 728.)  Moreover, the ALJ

20  observed that, even though at least some of plaintiff's neurological symptoms may be attributable

21  to her migraine headaches, the alleged severity of plaintiff's neurological symptoms was suspect,

22  given that multiple physicians had discussed the possibility that plaintiff was exaggerating or

23  malingering, as discussed further below.  (AT 29-30.)

24        Contrary to plaintiff's argument, the ALJ did not invent plaintiff's RFC by restricting

25  plaintiff to sedentary work.  The ALJ's RFC was not required to match the opinion of any

26  particular source, and the ALJ is obligated to consider the record as a whole.  See Magallanes v.

27  Bowen, 881 F.2d 747, 753 (9th Cir. 1989) ("It is not necessary to agree with everything an expert

28  witness says in order to hold that his testimony contains substantial evidence.").  Although state

1    agency physician Dr. Amon assessed an ability to perform light work, the ALJ ultimately

2    concluded that a restriction to sedentary work was more appropriate in light of plaintiff's obesity,

3    as well as giving plaintiff "some benefit of the doubt." (AT 30.)  That conclusion was reasonable

4    and rational, and any departure from Dr. Amon's opinion here in fact worked in plaintiff's favor.

5            With respect to the mental portion of plaintiff's RFC, the ALJ reasonably relied on the

6    opinion of consultative examining psychologist, Dr. Deborah Lacy.  (AT 30.)  Dr. Lacy

7    personally evaluated plaintiff on March 18, 2012, and noted that plaintiff was very well groomed

8    and had fair eye contact, normal thought processes, normal speech, normal thought content, a sad

9    mood and restricted affect, average intelligence, normal immediate and remote memory, impaired

10   recent memory, a normal fund of knowledge, normal concentration, intact abstract thinking, intact

11   insight and judgment, and could perform simple calculations without difficulty.  (AT 429, 432-

12   34.)  Dr. Lacy diagnosed plaintiff with a depressive disorder and an anxiety disorder, observing

13   that plaintiff's symptom severity was within the mild range and that she appeared to be able to

14   function adequately, adding that plaintiff's limitations appeared to be "primarily due to her

15   reported medical problems."  (AT 435.)  Dr. Lacy opined that plaintiff was able to perform simple

16   and repetitive tasks; able to perform detailed and complex tasks; able to maintain regular

17   attendance; not impaired in her ability to perform work activities without special or additional

18   supervision; mildly impaired in her ability to relate and interact with coworkers and the public;

19   and moderately impaired in her ability to perform work activities on a consistent basis, complete

20   a normal workday or workweek without interruptions, and deal with the usual stresses

21   encountered in competitive work.  (AT 435-36.)

22           Contrary to plaintiff's contention, the ALJ did not erroneously discredit the above-

23   mentioned moderate limitations assessed by Dr. Lacy.  It was not unreasonable for the ALJ to

24   find such limitations inconsistent with the largely normal findings on the mental status

25   examination, as well as Dr. Lacy's observation that plaintiff's symptom severity was within the

26   mild range, especially given that Dr. Lacy provided no explanation for the assessment of

27   moderate limitations in those areas.  (AT 30.)

28   ////

1   Nevertheless, even assuming, without deciding, that the ALJ erred in discrediting those

2   assessed moderate limitations, any such error was harmless.  Molina v. Astrue, 674 F.3d 1104,

3   1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is

4   harmless").  In this case, the ALJ limited plaintiff to simple and repetitive tasks in a non-public

5   setting with only occasional interaction with co-workers and supervisors.  (AT 28.)  A position

6   involving simple and repetitive tasks with only occasional interaction with people would logically

7   implicate less difficulties with consistency, endurance, and stress.  As such, the ALJ's RFC in any

8   event adequately captures the moderate mental limitations assessed by Dr. Lacy.  See Stubbs-

9   Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that an ALJ's assessment of a

10  claimant adequately captures restrictions related to concentration, persistence, or pace where the

11  assessment is consistent with restrictions identified in the medical testimony).  If anything, the

12  ALJ's RFC assessment appears to be more restrictive than the weight of the record evidence

13  actually suggests.

14      Moreover, the Ninth Circuit has already held that moderate mental limitations do not even

15  require vocational expert testimony.  Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007).  In

16  Hoopai, a medical source determined that the claimant was moderately limited in "his ability to

17  maintain attention and concentration for extended periods; his ability to perform activities within

18  a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability

19  to complete a normal workday and workweek without interruption from psychologically-based

20  symptoms and to perform at a consistent pace without an unreasonable number and length of rest

21  periods."  Id.  After the ALJ utilized the grids at step five to determine that the claimant was not

22  disabled, plaintiff contended on appeal that the ALJ was required to seek vocational expert

23  testimony regarding the limitations assessed.  Id. at 1075.  The Ninth Circuit rejected that

24  argument, holding that those moderate limitations were not sufficiently severe to prohibit the ALJ

25  from relying on the grids without the assistance of a vocational expert.  Id. at 1077.

26      Finally, plaintiff's argument that the ALJ failed to account for plaintiff's brief, involuntary

27  psychiatric hospitalization in June 2013 is unpersuasive.  Notably, the ALJ specifically

28  acknowledged that hospitalization in her decision, but found that it was not indicative of a long-

1   lasting, more severe psychiatric impairment.  (AT 30.)  The ALJ reasoned that the hospitalization

2   was based primarily on plaintiff's subjective reports of suicidal thoughts and other mental

3   symptoms, which the ALJ found not credible.  (Id.)  For the reasons discussed below, the ALJ's

4   finding and reasoning in that regard is well-supported by the record.  Although plaintiff

5   undisputedly suffers from mental impairments, and continued to receive mental health treatment

6   on an outpatient basis after that hospitalization, the ALJ reasonably found that plaintiff's mental

7   impairments did not result in the presence of disabling functional limitations for a significant

8   period of time.

9        Therefore, the court concludes that substantial evidence supports the ALJ's RFC

10  assessment.

11       *Whether the ALJ erroneously discounted plaintiff's credibility and the credibility of a*

12  *third-party witness*

13       In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of

14  Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

24  Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the

25  ALJ is not required to believe every allegation of disabling pain, or else disability benefits would

26  be available for the asking...."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

27       "The ALJ must specifically identify what testimony is credible and what testimony

28  undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685,

1  693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

2  1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the

3  "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

4  between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

5  testimony from physicians and third parties concerning the nature, severity, and effect of the

6  symptoms of which [claimant] complains.'"  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.

7  2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

8  1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the

9  court "may not engage in second-guessing."  Id. at 959.

10       In this case, the ALJ affirmatively found that plaintiff had malingered and exaggerated her

11  symptoms.  (AT 31.)

12       As the ALJ observed, during a December 2011 hospitalization at Mercy General Hospital,

13  treating physician Dr. Jason Spears noted that, despite plaintiff's report of a prior stroke, there

14  was no evidence of a current or prior stroke, and that plaintiff's subjective mild left-sided

15  weakness was of questionable etiology.  (AT 24-25, 628.)  He explained that her examination was

16  "very strange in that she at times during the exam used her left arm without any weakness

17  whatsoever--this was when she grabbed for something, fixed her hair or reached for something on

18  the stand.  However, when I did a focused exam, she had an exaggerated left subjective

19  weakness."  (AT 24-25, 647.)  Dr. Spears stated that he had consulted with Dr. Edwin Cruz, a

20  neurologist, who saw similar findings.  (Id.)  Dr. Spears had "considered hemiplegic migraine as a

21  possible diagnosis, but this really did not fit the clinical picture…."  (AT 629.)  He indicated that

22  he suspected malingering or a conversion disorder:

23            Again, at this time, I am not convinced that there is organic
             pathology causing this subjective left-sided weakness, and this
24            opinion is shared by consulting Neurology as well as it was
             confirmed after my discussion with patient's primary outpatient
25            neurologist, Dr. Sauer that she did not have any weakness on her
             previous exam with him, which again raises the question of
26            patient's malingering, as she reports that she did have persistent
             left-sided weakness resulting from a previous stroke.
27

28  (AT 630, 647.)

On March 13, 2012, plaintiff sought treatment at Washington Hospital Healthcare System, complaining of shortness of breath, chest pain, and left-sided weakness.  (AT 24, 507.)  Upon examination, plaintiff claimed that she could not move her left leg and could only wiggle her toes, even though she had walked into the emergency department.  (AT 25, 507, 509.)  Staff also documented that plaintiff showed no pushdown of the right heel when she was purportedly trying to lift her left leg during the examination.  (AT 25, 510.)  She was noted to be accompanied by "an acquaintance who is also visiting two pts in Fast Track who are requesting Phenergan with Codeine cough syrup."  (AT 509.)  After treating physician Dr. Kevin Morrissey explained that there was no indication for admission to the hospital:

> Pt stated "I can't walk and I need to be admitted."  She also requested Phenergan with codeine for URI sxs.  I informed her that we as a group have decided not to prescribe this med and that it was highly abused.  She seemed unhappy with this decision, and she rejected the offer for Robitussin with codeine.  I am suspicious that she is drug seeking and may also be having a conversion reaction. She has had extensive workups for stroke and do NOT feel like she is having a stroke.

(AT 25, 510.)

Thereafter, in April 2012, plaintiff went to the emergency room at Sutter General Hospital complaining of left-sided weakness, and stated that she had a history of stroke and depression. (AT 441.)  According to plaintiff, she woke up that morning barely being able to move her left side, but somehow made it to her primary care doctor's office, who sent her to the emergency room.  (AT 443.)  In the course of plaintiff's workup, treating physicians suspected a potential conversion disorder, somatoform disorder, or a hemiplegic migraine.  (AT 441, 445.)  However, in a subsequent physical therapy consultation, the physical therapist declined further treatment, indicating that plaintiff was "inconsistent with her ability to move the left lower extremity."  (AT 25, 441.)  Based on that finding, as well as plaintiff's normal diagnostic studies and negative workup for stroke, plaintiff was discharged by treating physician Dr. Inderpal Biring with diagnoses of left lower extremity weakness of unknown cause and possible malingering; depression; and questionable history of previous transient ischemic attack.  (Id.)

////

1    In light of the above, substantial evidence supports the ALJ's finding of malingering,

2  which is sufficient in itself to support the ALJ's decision to discount plaintiff's credibility.  See

3  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (noting that only "[i]n the absence of

4  evidence that Greger is malingering, the ALJ's reasons for rejecting his testimony must be clear

5  and convincing.").  To be sure, as plaintiff points out, treating providers at times pointed to other

6  potential causes for plaintiff's alleged left-sided weakness, such as a hemiplegic migraine, a

7  conversion disorder, or a somatoform disorder.  However, as shown above, at least some of those

8  providers nevertheless strongly suspected malingering after completing their full workup.

9  Moreover, even if those conditions remain as other potential causes for plaintiff's alleged left-

10  sided weakness, plaintiff at best offers an alternative interpretation of the evidence, and the court

11  defers, as it must, to the ALJ's rational and reasonable resolution of any inconsistencies and

12  ambiguities in the record.

13    Although not required to do so, the ALJ also referenced several other specific, clear, and

14  convincing reasons for discounting plaintiff's credibility.  The ALJ noted that plaintiff testified

15  that she got migraines every other day that were severe enough to make her throw up, but then

16  inconsistently testified that she got relief from her Botox injections that lasted for two weeks.

17  (AT 29-30, 96, 109.)  The ALJ also observed that plaintiff testified to using a cane about three

18  days a week, even though there is no evidence that healthcare providers advised her that she

19  required a cane, and she did not have her cane with her at the administrative hearing.  (AT 31,

20  76.)  Additionally, the ALJ pointed out that plaintiff told consultative examiner Dr. Lacy that she

21  was independent for basic self-grooming, completed light household chores, prepared simple

22  meals, helped her three children get ready for school, picked up her children from school,

23  watched television, and did her shopping once a week.  (AT 27, 432.)  Finally, the ALJ

24  thoroughly discussed and analyzed the medical evidence, concluding that the weight of such

25  evidence was inconsistent with plaintiff's testimony.

26    In light of the above, the ALJ reasonably discounted plaintiff's credibility.

27    Plaintiff further contends that the ALJ improperly discounted the credibility of a third

28  party witness, Debra Fitch, who completed a third-party function report on January 15, 2012.

1    (AT 258-65.)  "[C]ompetent lay witness testimony cannot be disregarded without comment" and

2    "in order to discount competent lay witness testimony, the ALJ must give reasons that are

3    germane to each witness."  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal

4    quotation and citation omitted).

5            Here, the ALJ specifically acknowledged Ms. Fitch's report, but indicated that Ms. Fitch

6    had failed to state how often she spends time with plaintiff, and that Ms. Fitch was possibly not in

7    an ideal position to evaluate plaintiff's symptoms and resulting limitations.  (AT 31.)  Indeed, Ms.

8    Fitch failed to indicate her relationship to plaintiff, how long she had known plaintiff, and how

9    much time she spent with plaintiff; many of her responses to questions in the form were vague;

10   and she indicated "unknown" or "not sure" in response to several questions.  (AT 258-65.)  As

11   such, the ALJ provided germane reasons for giving Ms. Fitch's report little weight.

12           *Whether the ALJ improperly failed to account for plaintiff's headaches*

13           Plaintiff's argument that the ALJ failed to properly account for plaintiff's headaches lacks

14   merit.  The ALJ specifically found plaintiff's migraine headaches, with associated cervical

15   paraspinal muscle spasms, to be a medically determinable and severe impairment at step two, but

16   discounted the degree of associated functional limitation alleged by plaintiff as inconsistent with

17   plaintiff's treatment.  (AT 24-25, 29-30.)

18           As noted above, plaintiff testified that she got migraine headaches every other day that

19   were severe enough to make her throw up.  (AT 96.)  However, on September 18, 2012, Dr.

20   Sauer, plaintiff's neurologist who treated her specifically for her headaches and associated muscle

21   spasms, noted that plaintiff had been treated with Botox that day, and would need another

22   injection in 2.5 months.  (AT 595.)  Subsequently, on October 17, 2012, Dr. Sauer noted that

23   plaintiff was about 4 weeks post Botox injection and had "done well again and examination

24   shows no spasm."  (AT 727.)  He observed that plaintiff would need another Botox injection in

25   about 8 weeks.  (<u>Id.</u>)  Dr. Sauer's relatively sparse treatment records do not indicate that any more

26   aggressive treatment was discussed or pursued.  As such, the ALJ reasonably found that the

27   relatively conservative level of treatment was inconsistent with plaintiff's allegations of extreme

28   and frequently-occurring migraine headaches.  Notably, Dr. Sauer did not even complete an

assessment of plaintiff's functional limitations, and the ALJ's RFC assessment for sedentary work and simple, repetitive tasks with only occasional interaction with others adequately accounts for any residual limitations attributable to plaintiff's migraine headaches. Indeed, plaintiff fails to point to any specific functional limitation attributable to plaintiff's migraine headaches assessed by a particular medical source that was not accounted for by the ALJ's RFC.

Accordingly, the court finds no error in the ALJ's evaluation of plaintiff's migraine headaches.

*Whether the ALJ erred in not evaluating plaintiff for a somatoform disorder*

Finally, plaintiff posits, for the first time in her federal court appeal, that the ALJ should have evaluated plaintiff for a somatoform disorder. Even assuming, without deciding, that the issue was not waived by failing to raise it below, plaintiff's argument fails on the merits.

In short, plaintiff weaves together various alleged symptoms and her interpretation of other evidence in the record in an attempt to match them with the requirements of Listing 12.07 for somatoform disorders. While admittedly creative, the argument ignores the fact that no medical source in the record had actually diagnosed plaintiff with a somatoform disorder. To be sure, as noted above, some of the emergency room physicians had at times considered the possibility that plaintiff may suffer from a conversion disorder or a somatoform disorder, but no such definitive diagnosis was ultimately made. Significantly, neither plaintiff's mental health treating providers nor the consultative examining psychologist, who are mental health specialists, diagnosed a somatoform disorder.

Thus, on this record, the ALJ had no obligation to independently evaluate plaintiff for a somatoform disorder.

V.   <u>CONCLUSION</u>

In sum, the court finds that ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1.   Plaintiff's motion for summary judgment (ECF No. 16) is DENIED.

2.   The Commissioner's cross-motion for summary judgment (ECF No. 25) is GRANTED.

1        3.      The final decision of the Commissioner is AFFIRMED, and judgment is entered

2  for the Commissioner.

3        4.      The Clerk of Court shall close this case.

4        IT IS SO ORDERED.

5  Dated:  July 11, 2016

6

7                                           KENDALL J. NEWMAN
                                           UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28